**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re: Case No. 26-18907-CLC

YOEL GETTER, Chapter 7

Debtor.
_________________________________/

**JUDGMENT CREDITORS' REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE UNDER 11 U.S.C. § 362(d)(1), INCLUDING ANNULMENT OF THE STAY**

Judgment creditors FVP Servicing, LLC, for the benefit of FVP Opportunity Fund III, LP, and FVP Investments LLC (collectively, "FVP Parties"), reply to the Debtor's Objection [ECF No. 34] (the "Objection") to FVP's Motion for Relief from the Automatic Stay [ECF No. 6] (the "Motion"), and state:

**Summary of the Reply**

This is not a case about an honest but unfortunate debtor seeking a fresh start. It is a case about the victims of an adjudicated fraudster attempting to retrieve the money that they were cheated out of.

On October 1, 2025 a Broward County jury found that Yoel Getter defrauded the FVP Parties. On October 3, 2025, Final judgment was entered against him for $8,841,219.72, of which $5,971,306.34 remained due on the petition date – and only because others made payments for their own participation in the fraud. Getter has never paid a dime. Nine months of post-judgment enforcement followed, and he has still paid nothing. He sure found money for lawyers. But the victims did not give up. Then, at 6:56 p.m. on the evening of July 7, 2026 — hours before the state court was to sign orders reaching his property that is held by others — he filed this case.

This should not be a difficult case for this Honorable Court to see what the jury saw and

what Judge Haimes found. Yoel Getter has acted in bad faith from the day he was served in the state court action and that bad faith continues unabated.

The Objection denies none of the bad acts or bad faith. It presents a purely legal argument that is wrong. The response makes a plea for a fresh start – but even a cursory review of the Debtor's own sworn schedules refutes any suggestion that anything has changed.

Simply put, the reasons cause exists under § 362(d)(1) are these:

1. Getter filed at 6:56 p.m. on July 7, 2026 — hours before the state court entered the orders instituting proceedings supplementary, authorizing his examination under § 56.29(5), and directing Notices to Appear to five impleaded third parties. [ECF No. 6-4.]

2. The motion that produced those orders had been pending and fully briefed since June 24, 2026, after nine months of writs of execution, third-party subpoenas, depositions in aid of execution, and motions to compel and for sanctions.

3. Five days before he filed, on July 2, 2026, a different court granted a different creditor leave to assert punitive damages against him. That court's *in camera* review of his communications with prior counsel under the crime-fraud exception was pending, and so was a summary judgment motion directed at his own third-party complaint. [ECF No. 32 ¶¶ 4, 28–34.]

4. On March 3, 2026, after a two-day evidentiary hearing at which he testified and was cross-examined, the state court found that he "knowingly and intentionally evaded service of process and knowingly and intentionally withheld his address from the investigators, process server, and this Court." [ECF No. 6-2 ¶ 21.] It found he was located only through license-plate-reader surveillance and served in a parking lot. [*Id.* ¶¶ 16–18, 36.]

5. The same order found that his neglect "was not excusable," that he "did not exercise due diligence," and that he "does not have a meritorious defense." [*Id.* ¶ 22.]

6. Six months after judgment was entered against him on liability, he sold a Mercedes for $138,000.00 and a Rolls-Royce for $297,000.00 on a single day and directed all $435,000.00 to his ex-wife and his lawyers. Not one dollar went to FVP. [ECF No. 28-2 at 59–60.]

7. He says those sales were made "as per MSA." The Marital Settlement Agreement was executed two days *after* the cars were sold, and in it he indemnified his spouse against this very case by name. [ECF No. 6-2 ¶ 14.]

8. Three months after that liability judgment he moved into an oceanfront condominium on Collins Avenue in Miami Beach, where he lived until the day he filed. His schedules

report a housing expense of **$0.00**. The unit belongs to his brother. [ECF No. 28-2 at 47, 51, 62.]

9. Those schedules also report $0.00 for utilities, $0.00 for food and housekeeping, $0.00 for clothing, $0.00 for medical care, $0.00 for transportation, and $0.00 for the childcare and education of his three dependent children. What he does pay is $1,500.00 a month in life insurance, $500.00 a month in vehicle insurance, and $729.87 a month on a leased 2026 Volvo his son drives. [*Id.* at 46–48.]
10. He reports **$0.00 of income from every source**. The household is funded by a single line captioned "Brother's Assistance" — $14,448.70 a month against $14,478.70 of expenses, for a monthly net income of exactly negative $30.00. [*Id.* at 45, 48.] The same brother paid his bankruptcy counsel $31,918.65. [*Id.* at 59.]
11. He earned $980,421.00 in 2024. He reports $0.00 for 2025 and $0.00 for 2026. The income stopped the year the judgment arrived. [*Id.* at 51.]
12. He swore that five of his companies were "[n]ever used and dormant – NO ASSET," and swore in the same filing, signed the same day under penalty of perjury, that three of those same five are businesses operating "To Present." [*Id.* at 6–7, 65, 67.]
13. He did not disclose the third-party complaint he was prosecuting on the petition date, and answered "No" when asked about other contingent claims — while now telling this Court that every collection claim belongs to the Trustee. [*Id.* at 10.]
14. He told this Court he "has timely complied with all deadlines in this Bankruptcy Case" [ECF No. 34 ¶ 11] on the same day he filed three means-test forms that had been due four days earlier under an extension he himself requested. [ECF Nos. 5, 17, 21, 29–31.]
15. Twenty-eight days into a case this Court's docket designates **no asset**, the claims register contains one claim. It is FVP's.

That is not a fresh start. It is part of the scam. It is a man with $20,430.00 in scheduled assets and an $18.3 million balance sheet, living in his brother's oceanfront apartment on his brother's money, who liquidated the last of his visible property the moment a court found him liable and who filed this petition the night before another court could reach what is left.

The Bankruptcy Code was not written for him.

## ARGUMENT

### I. The Totality-of-the-Circumstances Standard Governs This Individual Chapter 7 Case, and the Debtor's Own Authority Confirms It.

Section 362(d)(1) directs that the court "shall" grant relief "for cause," and once the movant makes an initial showing, the party opposing relief bears the burden on every issue but equity. 11 U.S.C. § 362(d)(1), (g)(2). The Objection's central contention is that the bad-faith markers FVP

identified "apply in the context of a bad faith analysis in a corporate Chapter 11 reorganization, but do not apply to an individual Chapter 7 bankruptcy." [ECF No. 34 ¶ 16.] That is wrong three times over.

First, *Phoenix Piccadilly* is not a reorganization-feasibility case. It is a stay-relief case, and it holds that a bad-faith filing is cause to lift the stay under § 362(d)(1). *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). The bad-faith inquiry is the same whether the relief sought is dismissal or stay relief. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026–27 (11th Cir. 1989). And the Eleventh Circuit has applied the totality analysis to a § 362(d)(1) motion in an individual case. *In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013); *accord In re Ellingsworth Residential Cmty. Ass'n*, 125 F.4th 1365, 1381 (11th Cir. 2025).

Second, the fifteen factors the Debtor quotes are the *Baird* factors, formulated and applied to an *individual chapter 7 debtor*. *In re Baird*, 456 B.R. 112, 116–17 (Bankr. M.D. Fla. 2010) (adopting *In re McDaniel*, 363 B.R. 239, 244 (M.D. Fla. 2007)). The Eleventh Circuit held in *In re Piazza*, 719 F.3d 1253, 1271–73 (11th Cir. 2013), that prepetition bad faith is cause in an individual chapter 7 case, and approved use of those very factors. A debtor cannot invoke a framework while denying that it governs him.

Third, his own authorities cut against him. *In re Makarewicz*, 121 B.R. 262 (Bankr. S.D. Fla. 1990), granted stay relief so the creditor could proceed in state court. *In re Video Cassette Games, Inc.*, 108 B.R. 347 (Bankr. N.D. Ga. 1989), concerned a chapter 11 debtor's own affirmative counterclaim. Neither speaks to a creditor enforcing a final fraud judgment.

## I. The Fresh Start He Invokes Is Reserved for the Honest but Unfortunate Debtor — and the Case He Cites for It Dismissed a Chapter 7 Debtor for Bad Faith.

The Objection asks the Court to protect the Debtor's "fresh start" and to "facilitate the fair and orderly distribution of assets," quoting *In re Ripley & Hill, P.A.*, 176 B.R. 596 (Bankr. M.D.

Fla. 1994). [ECF No. 34 ¶¶ 19–20.] That case dismissed the chapter 7 debtor before it as a bad-faith filing. *Id.* at 598–99. It was itself a *corporate* chapter 7 case that drew its standard from individual chapter 7 decisions — the transposition the Debtor calls impermissible — and the sentence he quotes is quoted in turn by *McDaniel*, 363 B.R. at 244, the same page his fifteen factors come from. Most directly, the *Ripley & Hill* court said this:

> "Had this case come before the court upon a motion to abstain or for relief from stay to pursue the pending state court action it would have been an easy case because this is a two party dispute which is partially adjudicated and more properly belongs in the state court."
>
> *Id.* at 598–99.

That is this motion, on stronger facts: the dispute here is not partially adjudicated but reduced to final judgment on a jury verdict. The Debtor's remaining authority is a dissent. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994) (Souter, J., dissenting). The fresh start the Code protects has never been unconditional; it belongs to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

Nor is there a distribution for the stay to protect. This Court's docket designates the case no asset, no bar date has been set, one claim is on file, and the Chapter 7 Trustee has filed nothing and has not appeared to assert the exclusivity the Debtor asserts on his behalf. A debtor may not claim the Trustee's protection over estate causes of action while withholding one of them — his own third-party complaint — from the Trustee. [ECF No. 28-2 at 10; *see* ECF No. 32 ¶¶ 39–43, 67.]

## II. The Debtor's Answers to the Individual Factors Are Answered by His Own Docket.

The Objection says the vehicle sales were disbursements "under the Marital Settlement Agreement" and that otherwise "the Debtor has not transferred any assets." [ECF No. 34 ¶ 17.j.] The agreement postdates the sales by two days. It says there is no "deliberate and persistent pattern of evading a single major creditor." [*Id.* ¶ 17.k.] Another court found that pattern as fact, after live testimony. It says factor thirteen cannot apply because "[t]here have been no allegations" of a failure to make candid and full disclosure. [*Id.* ¶ 17.l.] There are now, and they come from his own schedules. And it says he could not have timed the filing because he "did not know when the State Court would entry [sic] the subject orders, if ever." [*Id.* ¶ 17.c.] He did not need to know the hour; the motion had been fully briefed for two weeks. Courts in this district have found bad faith on materially identical timing. *In re Piazza*, 451 B.R. 608, 620 (Bankr. S.D. Fla. 2011) (petition one day before a state-court production deadline in aid of collection), *aff'd*, 719 F.3d 1253 (11th Cir. 2013); *In re Lezdey*, 332 B.R. 217, 223–24 (Bankr. M.D. Fla. 2005) (eve of a decisive hearing in proceedings supplementary).

Finally, a roster of other creditors does not defeat cause. The debtor in *Piazza* had other creditors too. 719 F.3d at 1271–73; *accord In re Bryant*, 474 B.R. 770, 775–77 (Bankr. N.D. Fla. 2012) (individual chapter 7 dismissed where filed to avoid one judgment creditor). Nondischargeability is a further weighty factor in the totality, *Feingold*, 730 F.3d at 1276 — a fraud debt is excepted on a preponderance, *Grogan*, 498 U.S. at 291, and the exception reaches all liability arising from the fraud, *Cohen v. de la Cruz*, 523 U.S. 213, 218–23 (1998) — though FVP does not ask this Court to decide dischargeability today.

## III. The Stay Should Be Annulled. The Broward Court Did Nine Months of Work Protecting These Victims, and an Overnight Filing Should Not Undo It.

Section 362(d) authorizes relief "by terminating, *annulling*, modifying, or conditioning" the stay. The Debtor's argument that the July 8 orders are "void" under *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir. 1982) [ECF No. 34 ¶ 21], is not an answer. It is the reason annulment exists. Because acts violating the stay are void, annulment is the mechanism Congress supplied to validate them, and the word "annulling" would be superfluous beside "terminating" if it did not operate retroactively. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). The Eleventh Circuit reaffirmed that power last year. *In re Patel*, 142 F.4th 1313, 1319–21 (11th Cir. 2025).

Every annulment factor favors FVP. *In re Morozov*, 649 B.R. 68, 76 (Bankr. M.D. Fla. 2023), *aff'd*, 671 B.R. 326 (M.D. Fla. 2025); *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004). Neither FVP nor the state court had knowledge of a petition filed at 6:56 the previous evening. The Debtor's bad faith — the most important factor — is the record set out above. Relief plainly would have been granted on a timely motion. And the orders take nothing from this estate: they implead third parties and set an examination.

What annulment protects is the work of another court. The Broward County court tried this case to a jury, entered final judgment, held a two-day evidentiary hearing on the Debtor's motion to vacate, made express credibility findings against him, supervised nine months of post-judgment discovery, and had FVP's impleader motion fully briefed for two weeks before it signed. It entered the July 8 orders in the ordinary course of a proceeding it had managed from the beginning, without knowledge that a petition had been filed overnight. That effort was expended to protect the parties this Debtor was found to have defrauded. To hold the orders void and stop there is to hand him a windfall for the hour he chose to file — the strategic deployment of the stay as a "poison pill" that weighed in favor of annulment in *Patel*. 142 F.4th at 1320.

## IV. At a Minimum, Relief Should Issue as to Non-Estate Property and the Impleaded Third Parties.

If the Court withholds full relief, FVP is entitled to proceed against non-estate property and against the five impleaded third parties — City Capital NY LLC, Zui Deutsch, Avraham Yosef Levy, ZD Consultants LLC, and Gelt Capital, LLC — whose obligations are not property of this estate. The Debtor's contention that all collection causes of action belong solely to the Trustee [ECF No. 34 ¶ 22] does not reach third-party obligors and non-estate assets. This is a core proceeding. 28 U.S.C. § 157(b)(2)(G).

## CONCLUSION

For the foregoing reasons, and those stated in the Motion, FVP respectfully requests that the Court enter an order:

1. granting relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1);
2. annulling the stay retroactive to the petition date so that the July 8, 2026 orders stand validated;
3. alternatively, modifying the stay to permit FVP to proceed at least as to non-estate property and the five impleaded third parties;
4. waiving the fourteen-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(4); and
5. granting such other and further relief as is just.

FVP notes for the Court's convenience that the Motion cites Rule 4001(a)(3), which was the correct designation for the fourteen-day stay before the restyling of the Bankruptcy Rules effective December 1, 2024. That provision is now Rule 4001(a)(4). The request is unchanged.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system upon all parties registered to receive electronic notice in

this case, including counsel for the Debtor, Jesse R. Cloyd, Esq., Agentis PLLC; the Chapter 7 Trustee, Barry E. Mukamal; and the Office of the United States Trustee.

Respectfully submitted,

**SCHWARTZ | BRESLIN, PLLC**
*Counsel for FVP Servicing, LLC, FVP Opportunity Fund III, LP, and FVP Investments LLC*
The DuPont Building
169 East Flagler Street, Suite 700
Miami, Florida 33131
Tel.: 305-577-4626 | Fax: 305-577-4630

**By: s/ Jerrell Breslin**

Jerrell Breslin, Esq.
Fla. Bar No. 269573
JB@JSJB.Law | EService@JSJB.Law