**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

**In re:**

**YOEL GETTER,**

**Debtor.**

**Case No. 26-18907-CLC Chapter 7**

**_______________________________________/**

## JUDGMENT CREDITOR FVP'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR PROTECTIVE ORDER LIMITING DEPOSITION DISCOVERY

FVP Servicing, LLC, for the benefit of FVP Opportunity Fund III, LP, and FVP Investments LLC (collectively, "FVP"), by and through undersigned counsel, files this Response in Opposition to the *Debtor's Motion for Protective Order Limiting Deposition Discovery to the Scope of the Contested Matter on the Motion for Relief from the Automatic Stay* [Dkt. No. 69] (the "Motion"), and states:[1]

## PRELIMINARY STATEMENT

1. The Debtor asks this Court to fence off his own deposition from the very facts that determine whether he filed this case in bad faith. He cannot. FVP noticed the deposition for use at the evidentiary hearing on FVP's *Motion for Relief from the Automatic Stay* [Dkt. No. 6] (the "Stay Relief Motion"), and the topics the Debtor complains of — his employment, his household and living arrangements, his post-petition payments to counsel, a subpoena to an entity connected to him, and the fraud that produced the judgment he seeks to escape

---

[1] References to the September 4, 2026 deposition of Yoel Getter are noted by ["Getter at ___"]

— go to the heart of the bad-faith inquiry the Court has already set for evidentiary hearing.

2. This is not a hypothetical dispute about where questioning *might* lead. The deposition went forward on September 4, 2026, and the short portion the Debtor permitted already produced textbook indicia of a bad-faith filing: a debtor who claims no income and roughly $30 in the bank [Getter at 11], yet whose brother pays his lawyers across multiple firms [Getter 10 and 16] and funds his living expenses [Getter 17]; who is "trying to get back into" the same cash-advance business that produced the fraud judgment [Getter at 11]; and who — one year after that judgment loomed — formed a new Florida entity at his old office address while disclaiming, then half-admitting, that he created it. [Getter 24-25] The Debtor suspended the deposition precisely when this line of inquiry began to bear fruit. [Getter at 34]

3. The Motion also inverts the governing burden. As the movant, the Debtor must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," to establish the good cause Rule 26(c) requires. *Stansell v. Revolutionary Armed Forces of Colombia*, 120 F.4th 754 (11th Cir. 2024). He offers none — only the label "fishing expedition" and the assertion that the questions relate to the pending nondischargeability adversary proceeding. Neither carries his burden, and neither is a reason to forbid inquiry into matters independently relevant to his bad faith. The Motion should be denied.

**RELEVANT BACKGROUND**

4. On July 8, 2026, FVP filed the Stay Relief Motion, seeking relief for cause under 11 U.S.C. § 362(d)(1), annulment of the stay, and

waiver of the fourteen-day stay of Rule 4001(a)(3), on the ground that the Debtor filed this case in bad faith. The Motion frames the bad-faith issue by reference to the timing of the petition, FVP's inability to collect on its judgment, the number of creditors, and the entry of the state court's orders, alleging among other things that the petition "was filed to avoid a single large judgment debt" and that the Debtor "deliberately and persistently evaded enforcement for nine months."

5. On August 6, 2026, the Court set the bad-faith issue for an evidentiary hearing, and on August 25, 2026, it entered a scheduling order confirming that "an evidentiary hearing is necessary to address" the Debtor's "alleged bad faith in connection with the Motion to Lift Stay."

6. FVP noticed the Debtor's deposition "for the purpose of discovery, for use at the evidentiary hearing on FVP's Motion for Relief from Stay." The deposition proceeded on September 4, 2026. When FVP's counsel questioned the Debtor about (a) service of a subpoena on Skytop GRP LLC, (b) his living arrangements, (c) his current employment, (d) the amount of post-petition attorney's fees paid to his counsel, (e) the facts underlying the state court lawsuit that produced the judgment, and (f) the allegations in the amended adversary complaint, the Debtor's counsel objected and suspended the deposition.

7. The judgment the Debtor seeks to avoid is a Florida final judgment for $8,841,219.72 entered against him on claims of fraud, civil conspiracy to commit fraud, and tortious interference, arising from a scheme in which he concealed a competing security interest and induced FVP to fund a $7.5 million loan. As of the July 7, 2026 petition date, the balance due was $5,971,306.34, the Debtor has made no payment, and the writ of execution remains outstanding.

(Declaration of Jerrell A. Breslin in Support of Plaintiffs' Motion for Summary Judgment at 6) The state court found that the Debtor knowingly and intentionally evaded service and denied his motion to vacate, and he took no appeal.

## ARGUMENT

### I. The Debtor Bears the Burden of Establishing Good Cause and Has Not Carried It.

8. The Motion is governed by Federal Rule of Civil Procedure 26(c), made applicable here by Bankruptcy Rules 7026 and 9014(c). The party seeking a protective order "bears the burden of establishing that good cause exists," and "[g]ood cause usually requires a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Stansell v. Revolutionary Armed Forces of Colombia, 120 F.4th 754 (11th Cir. 2024).* A movant seeking to avoid disclosure "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2008 WL 4500258 (S.D. Fla. Oct. 3, 2008) Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test, and the harm "must be significant, not a mere trifle." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696 (S.D. Fla. 2008)**.**

9. That burden operates against a strong presumption in favor of discovery. The Federal Rules "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co., 758 F.2d 1545 (11th Cir. 1985).* Discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *In re*

*Sheehan,* 625 B.R. 72 (Bankr. N.D. Ill. 2021). The movant seeking to limit discovery, not the examining party, must justify the restriction with evidence — courts should only limit discovery based on evidence of the burden involved, not on a mere recitation that the discovery request is unduly burdensome. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696 (S.D. Fla. 2008)

10. The Debtor makes no such showing. The Motion identifies no specific prejudice, no articulated harm, and no evidence of burden. It rests on the conclusory characterizations that FVP conducted a "fishing expedition" and a "wider" examination "under Rule 2004." Conclusory allegations of that kind are precisely what Rule 26(c) does not credit. *Stansell v. Revolutionary Armed Forces of Colombia*, 120 F.4th 754 (11th Cir. 2024); *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696 (S.D. Fla. 2008)**.** The good-cause requirement calls for "a sound basis or legitimate need for judicial action," established by a fact-specific showing; the Debtor supplies neither. On that ground alone, the Motion fails.

## II. The Challenged Topics Are Directly Relevant to the Bad-Faith Inquiry — and the Deposition Testimony Proves It.

11. The only issue on the Stay Relief Motion is whether cause exists under § 362(d)(1), and FVP has framed that issue as the Debtor's bad faith in filing. An automatic stay may be terminated for cause pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) There is "no particular test" for bad faith; the Eleventh Circuit applies a "totality-of-the-circumstances" standard under which the court "may consider any factors which evidence 'an intent to abuse the judicial process" or an intent "to delay or frustrate the legitimate efforts of secured creditors to enforce their

rights." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988)**;** *In re Piazza,* 719 F.3d 1253 (11th Cir. 2013) Because the inquiry is fact-intensive and discretionary, it "does not restrict a bankruptcy court's consideration of entire categories of facts and circumstances." *Piazza v. Nueterra Healthcare Physical Therapy, LLC*, 469 B.R. 388 (S.D. Fla. 2012)**.**

12. The categories of fact the Debtor seeks to place off-limits are the same categories the Eleventh Circuit and courts in this district routinely examine in deciding bad faith: whether the debtor filed to avoid "a large, single debt," whether he "made no life-style adjustments or continued living a lavish life-style," whether he "transferred assets," whether he "is paying debts of insiders," whether he "has sufficient resources to pay his debts," and whether he "employed a deliberate and persistent pattern of evading a single major creditor." *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013)**.** Applying those factors, courts rely on the debtor's own deposition testimony about his income, his transfers, and his payments to insiders. Here, the limited testimony the Debtor allowed maps directly onto those factors — which is why each challenged topic is relevant:

- **Current employment and financial resources.** Income and ability to pay are central to the totality inquiry. *In re Bryant*, 474 B.R. 770 (Bankr. N.D. Fla. 2012); *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013)**.** The Debtor testified he has no income and roughly $30 in the bank. [Getter at 11], yet is "trying to get back into" the cash-advance business "I used to do" — sourcing deals for commissions. [Getter at 11 and 12]; How a debtor with no income sustains himself, and whether he is resuming the same line of business that generated the judgment debt, are quintessential bad-faith questions.

- **Post-petition payments to counsel.** A debtor's ability to fund substantial legal fees while paying the judgment creditor nothing bears directly on his resources and the good-faith character of the filing; in *Bryant*, the debtor's ability to spend "$400,000 in legal fees" litigating against the creditor showed his non-payment was unwillingness, not inability. *In re Bryant*, 474 B.R. 770 (Bankr. N.D. Fla. 2012)**.** The Debtor testified that his brother, Aaron Getter, pays his attorneys [Getter at 10] — including the $31,918.65 reflected on his schedules and two additional $10,000 retainers to other firms. [Getter at 16 and 17] A debtor who claims to be penniless but whose family funds a multi-firm defense is squarely within the "sufficient resources" and "insider" factors. *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013)**.**

- **Living arrangements and household finances.** Courts examine whether a debtor maintains a comfortable standard of living funded by others — as in *Bryant*, where the debtor lived "off the largess" of a family member whose entity held assets beyond the creditor's reach. *In re Bryant,* 474 B.R. 770 (Bankr. N.D. Fla. 2012)**.** The Debtor testified that his brother or father pays for his meals and that he used a credit card "they used to pay." [Getter at 17] Who supports the Debtor, and through what accounts, is directly probative of his true financial condition.

- **The subpoena to Skytop GRP LLC and related entities.** Inquiry into affiliated entities and the location of assets is a recognized part of the bad-faith picture; courts find bad faith where a debtor places "assets and earnings out of [the creditor's] reach" through a related entity *In re Bryant*, 474 B.R. 770 (Bankr. N.D. Fla. 2012), and information concerning a non-party may itself "lead to the discovery of admissible evidence." *In re Willingham*, 493 B.R. 628 (Bankr. M.D. Fla. 2013)**.** The Debtor formed SkyTop GRP, LLC in Florida on

June 19, 2025 — the year of the FVP judgment — listing his former office address, first denying involvement ("I didn't cause anything"), then conceding "maybe I did do it" and "[m]aybe I filed it wrong." [Getter 24- 26]; *In re Bryant*, 474 B.R. 770 (Bankr. N.D. Fla. 2012). He described a web of other entities, including a Wyoming company he said he formed "[b]ecause I was bored," in response to questions about whether Wyoming was used "to hide the identity of the owner." [Getter 20 – 21] These are exactly the asset-location facts the bad-faith inquiry reaches.

- **The underlying fraud and the amended complaint's allegations.** The origin of the debt is central to whether the Debtor is an "honest but unfortunate debtor entitled to a fresh start" or one seeking "a head start" against a single creditor; courts weigh "the unfairness of the use of Chapter 7" where the debt "is at the core of [the debtor's] current circumstances." *Bryant, supra*. The Debtor's judgment arises from adjudicated fraud yet at deposition he disclaimed any knowledge of the case, testifying "I was not involved in the case. And you guys — you know you didn't serve me right" [Getter at 29] — reviving the very service and non-involvement defenses the state court rejected on express findings of intentional evasion. His willingness to contradict adjudicated findings under oath is itself relevant to the good-faith character of this filing.

## III. The Debtor's Evasiveness and Refusals Are Reason to Compel Continuation, Not to Curtail the Deposition.

13. A protective order is especially unwarranted where, as here, the deponent frustrated the examination. The Debtor repeatedly answered "I don't remember" and "I don't know" on basic matters, and flatly refused to answer questions about SkyTop GRP, LLC — "I'm not going to answer any questions regarding my brother's

companies." [Getter at 27] A deponent may not refuse to answer and then obtain an order foreclosing the subject altogether; the proper course is to complete the examination, subject to specific objections, so the Court has a full record for the bad-faith hearing. Rewarding the Debtor's non-answers with a protective order would let him convert his own obstruction into a shield.

## IV. Overlap with the Adversary Proceeding Does Not Foreclose Otherwise-Relevant Inquiry.

14. The Debtor's core premise — that any topic touching the nondischargeability adversary proceeding is off-limits — is wrong. That the facts of the Debtor's fraud are also relevant to the § 523 adversary does not make them irrelevant to his bad faith under § 362(d)(1). A single set of facts can be relevant to more than one proceeding, and the pendency of the adversary does not immunize the Debtor from questions bearing on the contested matter set for hearing. Once a contested matter is pending, discovery of matters related to it "must proceed in accordance with the discovery provisions of the Federal Rules of Civil Procedure" — exactly how FVP proceeded here. *In re Szadkowski*, 198 B.R. 140 (Bankr. D. Md. 1996)**.** Courts reject the very relevance objection the Debtor presses: in *Willingham*, a nondischargeability defendant moved under Rule 26(c) to block discovery as "not relevant," and the court called the argument "specious" because the information could "lead to the discovery of admissible evidence." *In re Willingham*, 493 B.R. 628 (Bankr. M.D. Fla. 2013)**.**

15. The Debtor's own argument refutes him. He contends that FVP "admits that it does not need any discovery currently on the allegations in the Adversary Proceedings" because FVP has moved for summary judgment there. That is correct — and it is the point.

FVP's summary judgment motion rests entirely on collateral estoppel from the state-court Final Judgment; its record "consists entirely of certified state court records, certified transcripts of sworn proceedings, and the Declaration," and it seeks no fact discovery on the fraud at all. Precisely because FVP needs no discovery to prove its § 523 claims, the deposition was not a backdoor into the adversary. It was what its notice said — discovery for the stay-relief evidentiary hearing on the Debtor's bad faith. The Debtor cannot argue both that FVP needs no adversary discovery and that FVP's deposition was really adversary discovery in disguise.

16. Finally, FVP did not misuse Rule 2004. It took the Debtor's deposition under the Civil Rules, made applicable by Rule 7026, for use at the stay-relief evidentiary hearing — the ordinary and proper mechanism for developing the bad-faith record. *In re Sheehan*, 625 B.R. 72 (Bankr. N.D. Ill. 2021)**.** If the Debtor believes particular questions stray to matters unrelated to the contested matter, the remedy is a contemporaneous, question-specific objection, not a blanket order forbidding whole subjects central to bad faith.

**V. Rule 30(d)(3) Provides No Basis for the Relief Requested.**

17. The Debtor also invokes Rule 30(d)(3), but that rule authorizes suspension or limitation of a deposition only when it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. Questions within the broad relevance standard of Rule 26(b)(1) are not conducted in bad faith or for oppression. *Sheehan*, supra. The Debtor identifies no abusive conduct — only questions he would prefer not to answer. That is not the oppression Rule 30(d)(3) addresses.

## VI. Contrary Authority Is Distinguishable.

18. To the extent the Debtor relies on *In re Kane & Kane*, which observed that filing Chapter 7 to "thwart the Judgment Creditors" collection efforts" was not surprising, nor indicative of bad faith, that decision does not aid him. *In re Kane & Kane*, 406 B.R. 163 (Bankr. S.D. Fla. 2009). The debtors in *Kane* had, by definition, effectively tendered to their creditors all of their non-exempt assets, and the court distinguished such a surrender from conduct designed to keep assets from creditors. Here, by contrast, FVP alleges — and the deposition testimony already suggests — that the Debtor filed to avoid a single fraud judgment while his obligations are funded by family and his interests are held through a web of entities; the pattern that *Piazza* and *Bryant* held supports a bad-faith finding. *In re Bryant*, 474 B.R. 770 (Bankr. N.D. Fla. 2012)**;** In re Piazza, 719 F.3d 1253 (11th Cir. 2013)**.** Whether *Kane* or *Bryant* controls is a merits question for the evidentiary hearing; it is not a reason to deny FVP the discovery needed to develop that record. In all events, timing in relation to collection is only one factor in a totality inquiry that expressly reaches the income, assets, transfers, and conduct the Debtor seeks to shield. *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013)**.**

**CONCLUSION**

For the foregoing reasons, FVP respectfully requests that the Court deny the Debtor's Motion for Protective Order, permit the Debtor's deposition to resume and proceed on the topics set forth above, forthwith, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

LINDSAY KARTEN, P.A.
*Counsel for FVP Servicing, LLC,*
*FVP Opportunity Fund III, LP, and*
*FVP Investments LLC*
3386 Churchill Drive
Boynton Beach, Florida 33435-8119
Tel.: 561-839-3223
Email: Lindsay@kartenlegal.com
By: /s/ Lindsay Karten
Lindsay Karten, Esq.
Florida Bar No. 30869
— and —
SCHWARTZ | BRESLIN PLLC
*Co-Counsel for FVP Servicing, LLC,*
*FVP Opportunity Fund III, LP, and*
*FVP Investments LLC*
169 East Flagler Street, Suite 700
Miami, FL 33131
Tel.: 305-577-4626
Jerrell Breslin, Esq.,
Florida Bar No. 269573
Email: JB@JSJB.Law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on September 11, 2026, by transmission of Notices of Electronic Filing generated by CM/ECF to all parties registered to receive electronic notices of filing in this case.

**By: /s/ Lindsay Karten**

Lindsay Karten