| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF FLORIDA | |
|---|---|
| Ciardi Ciardi & Astin<br>Albert A. Ciardi, III, Esquire<br>Daniel S. Siedman, Esquire<br>1905 Spruce Street,<br>Philadelphia, PA 19103<br>Telephone: 215-557-3550<br>Facsimile: 215-557-3551<br>aciardi@ciardilaw.com<br>dsiedman@ciardilaw.com | |
| *In re:*<br><br>YOEL GETTER<br><br>Debtor. | Chapter 7<br><br>Case No. 26-18907 |
| DEERFIELD CAPITAL, LLC<br><br>Plaintiff,<br><br>v.<br><br>YOEL GETTER.<br><br>Defendant. | Adv. No. |

**COMPLAINT OF DEERFIELD CAPITAL, LLC SEEKING A DETERMINATION THAT DEBTS OF THE DEBTOR ARE NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4), 523(a)(6) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001**

Deerfield Capital, LLC (referred to herein as "Plaintiff" or "Deerfield"), by and through undersigned counsel, Ciardi, Ciardi & Astin, hereby files this First Complaint (the "Complaint") against Yoel Getter (the "Debtor," "Defendant," or "Getter") pursuant to Federal Rule of Bankruptcy Procedure 7001(6) for a determination that the Debtor's debts are non-dischargeable pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 151, 157 and 1334, and the Federal Rules of Bankruptcy Procedure 7001(f).

2. This adversary proceeding is commenced pursuant to Federal Rule of Bankruptcy Procedure 7001(6).

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1408 and 1409. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (H), (I) and (J).

## THE PARTIES

4. Deerfield Capital, LLC ("Deerfield") is a limited liability company formed and operating in the Commonwealth of Pennsylvania, with a mailing address of 16 Deerfield Road, Lancaster, PA 17603. Deerfield is an unsecured creditor of the Debtor.

5. Yoel Getter is an adult individual and resident of the State of Florida and has filed for chapter 7 bankruptcy relief in this Court. The Debtor has a last known address of 9705 Collins Avenue, Unit 2403, Miami Beach, Florida 33154-2275.

## PROCEDURAL BACKGROUND

6. On July 7, 2026, Defendant filed a voluntary petition (the "Chapter 7 Petition") for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

7. On or about December 23, 2025, Deerfield filed a Complaint in the Eastern District of Pennsylvania. A true and correct copy of the Complaint is attached hereto as Exhibit "A". Deerfield incorporates the Complaint as if fully set forth herein.

8. On the day before the District Court entered a default judgment, the Defendant filed this bankruptcy.

9. Deerfield files this Complaint to object to the dischargeability of the Debtor's debts pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523 (a)(6).

## FACTUAL BACKGROUND

10. On or about April 10, 2024, Defendant Getter and non-party, Daryl Heller, agreed to a series of transactions whereby Daryl Heller would satisfy an alleged note to Gold Capital for $5,292,500.00 and Defendant Getter would cause Madison Group, LLC to fund Daryl Heller/Heller Capital Group $15,000,000.

11. Daryl Heller arranged for Plaintiff to fund the alleged Gold Capital payoff in exchange for repayment from the Madison Group loan, which was allegedly to be funded immediately following the payoff of the Gold Capital loan.

12. Since the date of the Complaint, Daryl Heller has subsequently been indicted by a grand jury and is awaiting criminal charges based on securities fraud.

13. Upon information and belief, Daryl Heller and the Debtor worked together to defraud Deerfield.

14. As part of Plaintiff's diligence *vis a vis* the payoff of Gold Capital, Paul Miller and Eric Warfel of Plaintiff communicated with Defendant Getter over interstate communications that Defendant Madison Group was prepared to wire $15,000,000 to Heller Capital Group once Gold Capital received its payoff, *See* Exhibit A to the Complaint.

15. Defendant Getter also provided the executed Merchant Cash Advance Agreement of Madison Group, *See* Exhibit B to the Complaint.

16. Based upon representation of Defendant Getter and documents provided by Defendant Getter all of which occurred through interstate commerce, Plaintiff wired Gold Capital $5,292,500 on behalf of Heller, *See* Exhibit C to the Complaint.

17. Subsequent to the wire by Plaintiff, Getter, Gold and Madison ceased communication and failed to fund Heller who then defaulted on obligations with Plaintiff.

18. But for the statements of Defendant Getter, documents provided by Defendant Getter, and promise of Defendant Getter to have Madison Group fund $15,000,000, Plaintiff would not have loaned Heller funds to pay Gold Capital and Defendant Getter.

19. Plaintiff reasonably relied upon the statements by Defendant Getter.

20. Defendant Getter's statements were materially false when made and were made with fraudulent intent to cause Plaintiff to rely.

21. Upon information and belief, Heller and Getter had a deal whereby Heller was paid by Getter to get the Gold Capital deal closed.

22. Now, Getter alleges he has no involvement with any company named Gold Capital or Madison Group.

23. Furthermore, Getter filed his Schedule A/B and Amended Schedule A/B and fails to mention any ownership of any company named Gold Capital or Madison Group. A true and correct copy of the Debtor's Schedules and Statement Under Penalty of Perjury are attached as Exhibit "B".

24. At the Debtor's 341, Getter confirmed that he does not have any ownership of Gold Capital.

25. Deerfield has subsequently learned that Getter has previously filed verifications, under penalty of perjury, that he is an owner and officer a company named Gold Cap, LLC.

26. On January 3, 2025, Getter executed a verification on a Complaint titled *Gold Cap LLC v. LKO Technologies, Inc.* et al. in the Supreme Court of State of New York, County of

Kings, whereby he verified, under penalty of perjury, that he is the owner and an officer of Gold Cap, LLC. A true and correct copy of the Kings County Complaint is attached as Exhibit "C".

27. Ironically, the Debtor did not list his ownership of "Gold Cap, LLC" on his Schedules. *See* Exhibit "B".

28. In another action in the State of Connecticut, titled *Gold Capital USA vs. SGMC Systematics Corporation, and RAVI Boga*, Getter executed an Affidavit of Debt whereby he stated he was an "account manager" of Gold Capital USA. A true and correct copy of the Affidavit of Debt is attached as Exhibit "D".

29. Coincidently, Getter is associated with multiple companies all with similar names, Gold Cap, LLC, Gold Capital, and Gold Capital USA, LLC.

30. Getter regularly engages in what is called a "carroting scheme" whereby, through fraud and larceny, Getter fraudulently "brokers" a deal, in this case through Heller, to entice and elicit a company (like Deerfield) to make the payment on a company that Getter owned.

31. Getter did the same scheme with the same companies in another action involving Life Star Living, LLC (the "Life Start Living Complaint"). A true and correct copy of the Life Start Living Complaint is attached hereto as Exhibit "E".

32. The Life Start Living Complaint shows that Getter employed the exact same fraud using both Gold Capital and Madison Group.

33. Here, Getter intentionally conspired with Heller to defraud Deerfield to pay off Gold Capital with the hope of immediate funding through Madison Group.

34. Upon information and belief, the Debtor regularly uses his "Gold persona" as a different person, even to the point of having multiple SIM Cards for his cell phones.

35. Mr. Getter regularly signs documents as “Matt Gold” with no title, phone or email, who is associated with companies with different names like Gold Capital USA, LLC or Gold Capital or Gold Cap.

36. Upon information and belief, Getter has two plans, one through Verizon and one through AT-T whereby he answers people as “Matt Gold” and “Getter” to further confuse and defraud people in his furtherance of his fraudulent schemes.

37. Upon information and belief, the statements of Defendant Getter were materially and intentionally false because:

a) Madison Group did not exist, did not have funds and never intended to loan Heller $15,000,000 million dollars;
b) Gold Capital’s loan was non-existent and/or fraudulent;
c) Getter and Heller had an undisclosed deal through which Getter was to return over $1,000,000 million to Heller from the funds wired by Plaintiff Exhibit D.
d) Getter, Heller, Gold and Madison conspired to hide that Madison did not exist, did not have funds or had no intentions of loaning Heller money.

38. When asked at his 341 Meeting if he ever owned a company with the name “Gold” in it, Debtor answered “NO.”

39. In addition to the fraud against Deerfield, the Debtor fraudulently lied on his schedules and omitted multiple companies he owns or owned in the two years prior to his Petition.

40. Now, Deerfield files this Complaint seeking to object to the Debtor’s discharge as to the debts of Deerfield and as to all debts.

## FIRST CAUSE OF ACTION
**(11 U.S.C. § 523(a)(2)(A) — Discharge Exception For Debts For Obtaining Money By False Pretenses, False Representation, Or Actual Fraud)**

41. Deerfield incorporates paragraphs 1 through 40 above as if fully set forth herein at length.

42. Section 523(a)(2)(A) provides that a debtor shall not be granted a discharge from any debt-

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. §523(a)(2)(A).

43. To sustain a claim under section 523(a)(2)(A), a creditor must prove (1) that the debtor made a false representation of fact (2) that the debtor (a) either knew the representation to be false or made the representation with reckless disregard for its truth and (b) also made with an intent to deceive, and (3) that the creditor justifiably relied on the false representation. Baker Dev. Corp. v. Mulder (In re Mulder), 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004) (internal citations omitted).

44. The Debtor intentionally and knowingly lured Deerfield into paying off Gold Capital with the intention of funding the loan through Madison Group.

45. The Madison Group documents were fabricated by the Debtor.

46. The Debtor was the alleged "broker" on the deal but actually owned or purported to own both Gold Capital and Madison Group.

47. The Debtor knowingly made false representations to Deerfield to induce Deerfield into lending money.

48. The Debtor also knowingly and continuously made false representations to Deerfield to induce Deerfield to fund the Gold Capital payoff.

49. The Debtor deliberately misled Deerfield into making the loan and that the loan would be repaid through Madison Group. Deerfield relied on those misrepresentations to their detriment.

50. The Debtor also conspired with Heller to defraud Deerfield.

51. Relying on those misrepresentations, Deerfield caused millions to be sent to Gold Capital, which furthered the fraud by and between Getter and Heller.

WHEREFORE¸ Plaintiff, Deerfield Capital, LLC, demand that all sums due and owing from the Debtor to Deerfield be deemed non-dischargeable under 11 U.S.C. §523(a)(2)(A), and granting such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (11 U.S.C. § 523(a)(4) — Discharge Exception For Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement or Larceny)

52. Deerfield incorporates paragraphs 1 through 51 above as if fully set forth herein at length.

53. Section 523(a)(4) provides that a debtor shall not be granted a discharge from any debt incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. §523(a)(4).

54. In order to prevail in a dischargeability action under § 523(a)(4), a plaintiff must prove two facts: (1) that the debt arose while the debtor was acting in a fiduciary capacity and (2) that the debt was incurred by fraud, defalcation, embezzlement, or misappropriation. In re Wolfington, 48 B.R. 920, 923 (Bankr. E.D. Pa. 1985).

55. The Supreme Court case of Bullock v. Bank Champaign, N.A., 133 S. Ct. 1754, 185 L. Ed. 2d 922 (2013), sets forth the relevant test for determining the level of intent for a debt to be non-dischargeable under 11 U.S.C. § 523(a)(4). Grigg v. Chaney, 2014 U.S. Dist. LEXIS

158769, 7 (W.D. Pa. Nov. 10, 2014). The Supreme Court found that "defalcation" under the statute includes a culpable state of mind requirement "as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Id. citing Bullock, 133 S. Ct. at 1757. Furthermore, defalcation refers to a "fiduciary's withholding of funds, and applies to conduct that does not rise to the level of fraud, embezzlement, or misappropriation." Leonelli-Spina v. Albro, 2010 U.S. Dist. LEXIS 32105, 17 (D.N.J. Apr. 1, 2010) (citing Casini v. Graustein (In re Casini), 307 B.R. 800, 819 (Bankr. D.N.J. 2004)). "A defalcation occurs when a fiduciary fails to account for funds received in his fiduciary capacity." Id. (citation omitted).

56. Federal Rule of Civil Procedure 9(b) only requires a plaintiff to "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" See Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied 469 U.S. 1211 (1985); see also Travelers Indemnity Co. v. Cephalon, Inc., 620 Fed. Appx. 82, 85-86 (3d Cir. 2015). Because it is rare that a defendant will admit to fraudulent intent, such intent is often demonstrated by circumstantial factual evidence which inferentially points to fraudulent intent. See, e.g., In re Bell, 498 B.R. 463 (Bankr. E.D. Pa. 2013) (finding that executive director of orthodontic practice had embezzled funds by making unauthorized payments to himself with corporate funds and noting that it "is the rare case in which a party will admit to fraudulent intent" and that thus, for purposes of Section 523(a)(4), "it is well settled that a plaintiff may prove fraudulent intent by circumstantial evidence and consideration of the totality of the circumstances") (Citations omitted).

57. Getter was allegedly a "broker" for the loan of Madison Group, but was also an owner of Gold Capital.

58. Getter failed to disclose his role in both companies, while also acting as a "broker."

59. Upon information and belief, Getter is an owner or manager of both Gold Capital and Madison Group, while also acting as an alleged broker, intentionally kept that information private in order to defraud Deerfield and induce Deerfield to pay Gold Capital.

60. Getter, as owner and/or manager of both Gold Capital and Madison Group, took actions, after Deerfield wired the money to Gold Capital, to pay Heller and further transfer the money into subsequent companies.

61. Getter conspired with Heller at all points to mislead and induce Deerfield to make payments.

WHEREFORE¸ Plaintiff, Deerfield Capital, LLC, demands that all sums due and owing from the Debtor to the Deerfield be deemed nondischargeable under 11 U.S.C. §523(a)(4), and granting such other and further relief as this Court deems just and proper.

**<u>THIRD CAUSE OF ACTION</u>**
**(11 U.S.C. § 523(a)(6) — Discharge Exception for Fraud or Willful and Malicious Injury to Another Entity or Property of Another Entity)**

62. Deerfield incorporates paragraphs 1 through 61 above as if fully set forth herein at length.

63. Section 523(a)(6) provides that a debtor shall not be granted a discharge from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. §523(a)(6).

64. The Debtor enticed Deerfield to fund the Gold Capital loan to perpetuate a fraud on Deerfield and steal money.

65. As detailed above, Debtor enticed Deerfield through a "carotting scheme."

66. The Debtor falsified documents on behalf of Madison Group to perpetrate this carotting scheme and/or fraud.

67. On at least one occasion, the Debtor caused and/or directed parties to falsify a document to convince Deerfield that money was potentially available.

68. As a result of the actions of Debtor, Deerfield has been severely damaged.

69. The foregoing allegations constitute criminal conduct, described willful and malicious behavior and the damages flowing therefrom are therefore nondischargeable.

WHEREFORE, Plaintiff, Deerfield Capital, LLC, demands all sums due and owing from the Debtor be deemed nondischargeable under 11 U.S.C. §523(a)(6), and granting such other and further relief as this Court deems just and proper.

.

**CIARDI CIARDI & ASTIN**

Dated: October 6, 2026

By: ***/s/ Albert A. Ciardi, III***
Albert A. Ciardi, III, Esquire
Daniel S. Siedman, Esquire
1905 Spruce Street,
Philadelphia, PA 19103
Tel: 215-557-3550
Fax: 215-557-3551
aciardi@ciardilaw.com
dsiedman@ciardilaw.com
Counsel to Deerfield Capital, LLC