**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re: Case No. 26-18907-CLC

YOEL GETTER, Chapter 7

Debtor.
____________________________________/

# EMERGENCY MOTION TO COMPEL ACCESS TO DEBTOR'S BUSINESS RECORDS AND IMAGING OF DEVICE

**Emergency Hearing Requested**

Mr. Getter testified earlier today that while he is no longer conducting business, he regularly engages in collection activity, which yields substantial sums. He also testified that (i) he erased the hard drives for his businesses, (ii) he keeps no physical records, and (iii) all of his business activity is stored on his iPhone. To that last point, Mr. Getter refused his own lawyer access to that device (which is undisclosed property of the estate) to verify his testimony regarding its contents. Mr. Getter's lack of candor, the deceitful nature of his testimony, and his history of spoliation give Mr. Mukamal great concern that direct, immediate, and substantial harm will occur if emergency relief is not considered on **October 22, 2026** when this Court is set to hear other matters in this case

Barry E. Mukamal, duly appointed, qualified and acting trustee ("Trustee Mukamal") of the chapter 7 bankruptcy estate of Yoel Getter ("Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §§ 521, 542 and 704, Rules 2004, 7037 and 9014, Fed. R. Bankr. P., and Local Rules 9013-4, moves (the "Motion") the Court for the entry of an Order compelling access to the Debtor's business records including imaging of device(s), and in support thereof, respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in

this Court pursuant to 28 §§ 1408 and 1409. The statutory predicate for the relief sought is section 521 and 542 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

**BACKGROUND**

2. Mr. Getter voluntarily commenced this case upon the filing of his petition for relief under chapter 7 of the Bankruptcy Code on July 7, 2026 [Dkt. No. 1].

3. As previewed at an earlier hearing, Mr. Getter successfully owns and operates several merchant cash advance businesses which, according to public records, yielded the Debtor substantial wealth.

4. On October 20, 2026, Trustee Mukamal began the examination of the Debtor under Bankruptcy Rule 2004 to investigate the Debtor's financial affairs, including the interests of the Debtor in the several cash advance businesses he listed on his schedules (as well as several he did not). See Dkt. No. 55.

5. The Debtor's testimony was blatantly obstructive. Mr. Getter answered nearly every questions with "I can't remember" or "I don't know" responses. He testified that he keeps no records relating to any of his business activities and that since January 1, 2025, he conducts no business and spends his days "staring at the skies." The testimony is demonstrably false.

6. First, Trustee Mukamal has direct evidence of the Debtor's business conduct since January 1, 2025 in numerous collection activities, both in court, and out. Second, Mr. Getter later testified that when an advance that he helped arrange through one of his various entities goes into default, he alone is tasked with collecting the receivable. Third, he also testified that he had earned yet not paid commissions and syndicate participation in several outstanding advances since he purportedly stopped doing business.

7. His testimony on this last point was self-contradictory. At one point he said there are no documents to evidence the underlying deals or the outstanding amounts; but later he referenced a spreadsheet in which he kept track; but later he testified that he kept track in his head "because he is so smart." Apparently, Mr. Getter thinks he is smarter than the Court.

8. Documentary evidence in a case where the Debtor will engage in such bald-faced lies is critically important. Here, the Debtor testified that he keeps absolutely no physical business records. Instead, he testified that all of his business is conducted through three electronic mail accounts (as well as text messages and WhatsApp messages) that he accesses on his Apple iPhone (which was not scheduled), that he has had his same iPhone for at least the past 6 months, and that it is periodically backed up (though he would not provide the Apple ID account). He testified that he has no computer (having erased his business computers' hard drives with the help of an IT professional he could not remember the identity of), no laptop, no iPad, and no other cell phone or other device.

9. In order to avoid an argument over privacy, but given his evasive and false testimony in the 2004 examination, Trustee Mukamal asked Mr. Getter's counsel to verify the existence of only those three email accounts. Mr. Getter refused. A break was taken to discuss the request off the record. On the record, and against instruction from his own counsel, Mr. Getter refused to allow his own counsel to verify the existence of any additional emails on an electronic device that is property of the estate and, according to his own testimony, contains Mr. Getter's only access to records related to his business.

10. This is important because Mr. Getter has not turned over a single document that would enable Trustee Mukamal to track the receivables he is owed on account of his continued

business activities and the aforementioned earned yet not paid commissions and syndicated participation rights.

11. The historical information is vast and substantial. For example, in his divorce proceedings, Mr. Getter scheduled a $3.3 million debt owed to a Gavriel Yitzchkov as of "April 23, 2025." But Mr. Getter did not schedule this debt owed as of July, 2026 and he testified that he repaid Mr. Yitzchkov in full through collections since that date on defaulted advances, though he would not explain with any detail how much or when: "I do not recall" or "I don't remember."

12. Not to bury the lede, but his testimony that there are no business records is also contradictory to testimony in other proceedings in which he swore under the penalty of perjury that all books and records were maintained under his supervisions and control, existed on his phone and in his emails.

13. It is also worth noting that, notwithstanding the broad litigation hold in the 2004 request [Dkt. No. 46, pg. 16], he testified that he continues to purge his cell phone on a daily basis, regularly deleting emails and keeping his WhatsApp messages on 24 hour auto delete.

**RELIEF REQUESTED**

14. Considering Mr. Getter's obstinance, Trustee Mukamal is seeking to compel access to the Debtor's records and forensic imaging of the Debtor's device.

**BASIS FOR RELIEF REQUESTED**

15. The Chapter 7 trustee is charged by statute to "investigate the financial affairs of the debtor." 11 U.S.C.A. § 704. To that end, the Debtor must "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4). The Court may also, after notice and a

hearing, order any person holding recorded information relating to the Debtor's property or financial affairs to turn it over to the Trustee. 11 U.S.C. § 542(e).

16. Bankruptcy Rule 2004, in turn, is broad in scope and is "expressly designed to permit a broad investigation that may lead to the discovery of assets or other matters relevant to the administration of the estate." *In re Banco Master, S.A*., 678 B.R. 690, 697 (Bankr. S.D. Fla. 2026). A Rule 2004 examination is properly used to "determine the condition, extent, and location of the debtor's estate." *In re Marathe*, 459 B.R. 850, 856 (Bankr. M.D. Fla. 2011). Its legitimate goals include "discovering assets, examining transactions, and determining whether wrongdoing has occurred," and it may legitimately take the nature of a "fishing expedition." *In re No Rust Rebar, Inc.*, No. 21-12188-PDR, 2022 WL 17365810, *2 (Bankr. S.D. Fla. Dec. 1, 2022). When a trustee seeks the Debtor's records, the established practice is a turnover request or a Rule 2004 motion, "including the production of documents." *In re Patel*, No. 16-65074-LRC, 2017 WL 377943 (Bankr. N.D. Ga. Jan. 26, 2017). Production and attendance are compelled through Rule 9016, which incorporates Federal Rule of Civil Procedure 45.

17. Courts in this District order forensic examination of a party's electronic devices by an independent expert where the party "has withheld requested information," is "unable or unwilling to search for the requested information," or has failed to comply with discovery; on such a showing, "the scales tip in favor of compelling forensic imaging." *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp*., 280 F.R.D. 681, 686–687 (S.D. Fla. 2012). Where a party is "either unwilling or unable" to search its own systems, "a forensic examination ... is warranted." *Id*. That principle applies squarely to cell phones: courts in this District have compelled an independent expert to mirror-image a party's cell phone, search it by agreed terms, and deliver the results to the producing party's counsel for review. *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-

CV-80148, 2021 WL 1215218, *2 (S.D. Fla. Mar. 31, 2021) (compelling access to litigant's cell phone).

18. The Trustee acknowledges the governing limits and has tailored this Motion to satisfy them. A court should compel forensic examination of a cell phone only when the examination will reveal information "relevant to the claims and defenses" and is "proportional to the needs of the case given the cell phone owner's compelling privacy interest in the contents of his or her cell phone." *In re 3M Combat Arms Earplug Prods. Liab. Litig*., No. 3:19-MD-2885, 2020 WL 6140469, *4 (N.D. Fla. Oct. 15, 2020). A motion should be denied where the movant fails to show the image will likely produce the material sought, a less-invasive means exists, or the motion "is not accompanied by a proposal for a protocol appropriately tailored to protect the privacy concerns of the opposing party." *Id.* (quoting *Hardy v. UPS Ground Freight, Inc*., No. 3:17-cv-30162-MGM, 2019 WL 3290346, at *3 (D. Mass. July 22, 2019)). This Motion satisfies each requirement.

19. As explained above, the Debtor is willfully ignoring his duties under section 521 and Bankruptcy Rule 2004. That he would ignore his own counsel's instruction to allow him to verify the existence of only three email accounts on An unscheduled device that is property of the Debtor's bankruptcy estate is evidence enough of his intent to withhold information. His behavior is not unique to this case, either. He also testified that he wiped the hard drives of his only business computers pre-petition and that there are no business records other than on his phone. In light of his conduct and his unwillingness to cooperate, Trustee Mukamal is left with no choice but to seek this relief and tax the expense on Mr. Getter. Trustee Mukamal's request is narrowly tailored to protect Mr. Getter's privacy.

***Proposed Forensic Protocol***

20. **Production**. Within 3 days of entry of the Order, the Debtor shall surrender to the Court-approved examiner each Apple iPhone (any any other mobile device) he has used since January 1, 2021, including the devices associated with the numbers 917-586-5739 and 929-302-0745, together with all passcodes, biometrics, and credentials necessary to access the devices and any linked iCloud account.

21. **Neutral examiner.** An independent digital forensic analyst shall be retained as an officer of the Court. The parties shall confer and jointly designate the examiner within two (2) days; absent agreement, each shall submit a nominee and the Court will select.

22. **Confidentiality.** The examiner (and any support personnel) shall execute a confidentiality undertaking under a protective order before receiving any device.

23. **Imaging.** The examiner shall create a forensic (mirror) image of each device and promptly return the device to the Debtor; if a full image is not feasible due to device security, the examiner shall acquire as much data as possible.

24. **Search terms.** The parties shall confer on search terms directed to the Debtor's entities and the transactions under investigation (e.g., the entity names, counterparties, financial institutions, and the merchant-cash-advance transactions); absent agreement, the Court will set the terms. The examiner shall run the agreed terms against the image.

25. **Privilege review and production.** The examiner shall deliver the search-term results to the Debtor's counsel first; the Debtor's counsel shall, within twenty (20) days, produce responsive, non-privileged materials to the Trustee and serve a privilege log, compliant with the Local Rules, for anything withheld.

26. **Entity electronic mail.** The foregoing protocol regarding search terms and privilege review and production shall not apply to the business electronic mail accounts identified by the Debtor in his Rule 2004 examination (joel@citycapitalny.com and joel@riversidecapitalny.com) which contents shall be produced to Trustee Mukamal, *en toto*.

27. **Certification.** The examiner shall provide a signed affidavit describing the imaging and search steps taken.

28. **Preservation.** Pending compliance, the Debtor shall preserve all devices, accounts, and data and shall disable any auto-deletion feature.

29. **Costs.** The Debtor shall advance the examiner's reasonable fees.

***Certificate of Conference***

30. Undersigned counsel certifies that he conferred, or made a good faith effort to confer, with the Debtor's counsel regarding the relief requested and the parties were unable to resolve the matter.

WHEREFORE, Trustee Mukamal respectfully requests that the Court enter an order: (a) granting this Motion; (b) compelling the Debtor to surrender his Apple iPhone(s) and related mobile devices, with access credentials, to a neutral Court-approved digital forensic analyst within three days; (c) approving and directing the forensic protocol and preservation requirements set forth herein; (d) providing that any failure to comply may result in sanctions; and (e) granting such other and further relief as the Court deems just and proper.

Dated: October 20, 2026. Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

By: */s/ Eric J. Silver*
ERIC J. SILVER
Florida Bar No. 057262
esilver@stearnsweaver.com
*Counsel to Trustee Mukamal*